# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOSHUA MILES SCAFFIDI,

    Plaintiff,

    v.                                  Case No. 04-C-830

BRAD TIMM, ANDY RICH,
DAVID GROVES, OFFICER RESCH,
OFFICER GRABOWSKI and
OFFICER CAVAIANI,

    Defendants.

## DECISION AND ORDER

On September 2, 2004, the plaintiff, Joshua Scaffidi, who is proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging a violation of his Fourth Amendment rights in connection with his arrest and the search of his apartment on the evening of January 30, 2004. An amended complaint (complaint), which is the operative complaint in this action, was filed by the plaintiff on October 12, 2004.

On November 22, 2004, United States District Judge Charles N. Clevert, Jr. screened the complaint under 28 U.S.C. § 1915A and allowed the plaintiff to proceed in forma pauperis on a Fourth Amendment illegal search and seizure claim against the above-named defendants and a Fourth Amendment excessive force claim against defendants Brad Timm and Andy Rich. The plaintiff was not permitted to proceed on his Fourth Amendment false arrest claim.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C.

§636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). On February 9, 2005, the parties consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis).

Presently before the court is the defendants' motion for summary judgment which will be addressed herein. The defendants motion for summary judgment complies with Civil Local Rule 56.1 (E.D. Wis.). Specifically, the defendants' motion includes a short and plain statement that any factual assertion in their affidavits or other admissible documentary evidence will be accepted by the court as being true unless the plaintiff submits his own affidavit(s) or other admissible documentary evidence contradicting the factual assertions. The defendants have also included the text of Federal Rule of Civil Procedure 56(e) and (f) and Civil Local Rules 56.1, 56.2 and 7.1 along with their motion.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F. Supp. 1458, 1460-71 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The burden of showing the needlessness of trial - (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law - is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party

retains its burden of producing evidence which would support a reasonable jury verdict. Anderson, 477 U.S. at 267; see also, Celotex Corp., 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56[c], except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e) ("When a summary judgment motion is made and supported as provided in [Rule 56(c)], an adverse party's response, by affidavit or otherwise provided in [Rule 56(c)], must set forth specific facts showing that there is a genuine issue for trial"). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322 (emphasis added).

## MOTION FOR SUMMARY JUDGMENT

The relevant undisputed facts are taken from the defendants' Proposed Facts (DPF) and the plaintiff's sworn complaint to the extent that they are undisputed and comply with Federal Rule of Civil Procedure 56(e). See Ford v. Wilson, 90 F.3d 245, 246 (7th Cir. 1996). Averments from the defendants' affidavits or the plaintiff's sworn complaint which are conclusory, not made with personal knowledge, or otherwise not admissible in evidence have not been included in the relevant undisputed facts. See Fed. R. Civ. P. 56(e). The plaintiff filed five "responses" to the defendants' motion for summary judgment. (Docket ## 37, 39, 44, 45 and 46). None of these responses or any statements attached thereto were sworn. Hence, these responses may not be used as affidavits at the summary judgment stage. Id. Furthermore, the "exhibits" attached to the responses were not authenticated and will not be considered in deciding the summary judgment motion. See Wood v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000) (under Federal Rule of Civil Procedure 56[e], district court may

- 3 -

consider documents other than affidavits in deciding motion, as long as the documents are properly authenticated and otherwise admissible).

The defendants' object to the court's consideration of two of the unsworn responses on the ground that they were untimely: (1) an untitled two-page document filed July 13, 2005, (Docket # 45) that appears to be a supplement to the plaintiff's original response to the defendants' motion for summary judgment; and (2) an untitled document filed on July 18, 2005, (Docket # 46) which also appears to be a supplement to the plaintiff's original response. The defendants filed their motion for summary judgment on June 10, 2005. Under Civil Local Rule 7.1(c) (E.D. Wis.), the plaintiff was required to serve a response to the motion "within 30 days of service of the motion." However, the defendants did not file a certificate of service with their motion as required under Civil Local Rule 7.1(d). Therefore, the court is unable to conclude that the plaintiff's supplemental submissions are untimely.

## **RELEVANT UNDISPUTED FACTS**

On January 30, 2004, the plaintiff resided in a two-story apartment located at 31A South Main Street in the City of Oconomowoc, Wisconsin. (DPF ¶1). At approximately 8:30 p.m. on January 30, 2004, the plaintiff was at his residence with three guests, Bruce Nold, James Syvertson and David Arenson. (DPF ¶ 2). The plaintiff and his guests had been smoking crack cocaine at his residence. (Deposition of Joshua Scaffidi [Scaffidi Dep.] at 63:13-64:1-10).

At approximately 8:30 p.m. on January 30, 2004, defendants Oconomowoc Police Officers Andrew Rich and Brad Timm arrived at the plaintiff's residence. (DPF ¶ 4; Complaint at 6). At all times material to this action, defendants Rich and Timm were acting in their official capacities as officers with the Oconomowoc Police Department. (DPF ¶ 5). Defendants Timm and Rich had been provided with a municipal warrant that had been issued

for Mr. Scaffidi's arrest prior to their arrival at the plaintiff's house. (Affidavit of Andrew Rich [Rich Aff.] ¶ 3; Affidavit of Brad Timm [Timm Aff.] ¶ 3; Supplemental Affidavit of Andrew Rich [Rich Supp. Aff.] ¶ 2, Exhibit A). The plaintiff states in his complaint that he believes the warrant was "fake." (Complaint at 5-6). Defendants Rich and Timm went to the plaintiff's residence for the purpose of taking him into custody pursuant to that warrant. (DPF ¶ 7).

When defendants Rich and Timm approached the rear door of the plaintiff's residence, they could hear the voices of more than one person talking inside. (Rich Aff. ¶ 4; Timm Aff. ¶ 4; Plaintiff's Response at Docket # 44 [Plaintiff's Response] ¶ 2). Defendant Rich knocked on the rear door to the plaintiff's residence and the plaintiff responded by calling out, "Who is it?" (Scaffidi Dep. 73:5-11; Rich Aff. ¶ 5; Timm Aff. ¶ 5; Plaintiff's Response ¶¶ 4, 6). The officers did not identify themselves as police. (Complaint at 6). Defendant Rich knocked on the door a second time and the plaintiff again replied, "Who is it?" Defendant Rich then responded, "It's Brad." (Scaffidi Dep. 73:19-24; Rich Aff. ¶ 5; Timm Aff. ¶ 5; Plaintiff's Response ¶ 13; Complaint at 6). The plaintiff then opened the door, but closed it when he realized that it was the police at the door. (Scaffidi Dep. 74:5-10, 75:20-25, 77:3-13; Rich Aff. ¶ 6; Timm Aff. ¶ 6; Plaintiff's Response ¶ 19).

Although the door was closed, defendants Rich and Timm could still hear voices coming from inside the residence. They were also able to hear at least one person walking up the stairs inside the residence and could hear the sound of running water coming from what they later determined to be the area of the kitchen sink. (Rich Aff. ¶ 7; Timm Aff. ¶ 7; Plaintiff's Response ¶ 29). Defendant Rich continued to knock on the rear door and the plaintiff once again opened it. At this point, defendants Rich and Timm could see that the door remained secure with a chain lock. (DPF ¶ 13). The plaintiff asked defendants Rich and Timm why they were there and they responded that they had a warrant for the plaintiff's

- 5 -

arrest. (DPF ¶ 14). The plaintiff then told the officers to "hold on" that he was "getting his jackit [sic] to come out" and closed the door again. (DPF ¶ 15; Complaint at 3 [handwritten sheet]).

Defendants Rich and Timm knocked on the door again and demanded that the plaintiff open the door. (DPF ¶16). This time, when the plaintiff began opening the door, defendant Rich pressed on the door with his hand. (Scaffidi Aff. ¶ 79:21-23; Rich Aff. ¶ 9; Timm Aff. ¶ 9; Plaintiff's Response ¶ 38). The plaintiff pushed back on the door and defendant Rich then braced against the door to prevent it from being closed. (Rich Aff. ¶ 9; Timm Aff. ¶ 9). According to the plaintiff, the officers "pushed open the door and pushed me up on it hard." (Complaint at 3 [handwritten sheet]). Thereafter, the plaintiff ended up on the floor. (Scaffidi Dep. at 84:20-25, 85:1; Rich Aff. ¶ 9; Timm ¶ 9). The plaintiff contends that he was pushed down to the floor by defendants Timm and Rich. (Scaffidi Dep. at 84:20-25, 85:1). The defendants maintain that defendant Rich braced the door open so the plaintiff would not close it again and that caused the plaintiff to fall to the ground. (Rich Aff. ¶ 9; Timm Aff. ¶ 9).

Defendant Rich pulled the plaintiff to his feet and he and defendant Timm then held the plaintiff against the door and secured him with handcuffs. (DPF ¶ 19.) The plaintiff states that the handcuffs were too tight. (Complaint at 3 [handwritten sheet]).

When defendants Rich and Timm first entered the plaintiff's residence, the plaintiff and his guest, Bruce Nold, were on the first floor of the residence while his other two guests, David Arenson and James Syverson, were on the second floor. (DPF ¶ 24.) As the plaintiff was being taken into custody, defendant Rich "believed there was at least one other unknown person on the second floor of the residence" and "then performed [a] protective sweep of the first and second floor of the residence." (DPF ¶ 26 and Rich Aff. ¶¶ 13 and 25). During the

course of performing the protective sweep, defendant Rich called out, "Police Department" and "Oconomowoc Police" several times. (DPF ¶ 27).

When defendant Rich reached the second floor, he encountered Mr. Arenson and Mr. Syverson and observed, in plain view, a plate containing one piece of suspected crack cocaine, a razor blade, and several plastic bag corners containing a white powdery substance. (DPF ¶ 28). Immediately after the plaintiff was placed in handcuffs, defendant Officer Doug Grabowski arrived at the plaintiff's residence. He took the plaintiff to a waiting squad car where he was placed in the rear seat. (DPF ¶ 20). Approximately five minutes later, defendant Grabowski returned to the squad car and loosened the plaintiff's handcuffs. (DPF ¶ 21). None of the defendants used any force against the plaintiff after he had been taken into custody and placed in the squad car. (DPF ¶ 22).

The circumstances surrounding his arrest form the entirety of the plaintiff's excessive force claim. (Scaffidi Dep. at 101:8-21). The plaintiff suffered no permanent physical injuries during the course of his arrest or during his subsequent detention and only experienced some temporary numbness in one hand. (Scaffidi Dep. at 101:8-21).

The plaintiff refused to consent to a further search of his residence. (DPF ¶ 29). Defendant Detective David Groves was shown the evidence that defendant Rich observed in plain view. Defendant Groves then obtained a search warrant for the residence. (Affidavit of David Groves [Groves Aff.] ¶¶ 6-8, Ex. B). Upon receipt of the signed search warrant at approximately 1:00 a.m. on January 31, 2004, the officers continued the search of the plaintiff's apartment. (Rich Aff. ¶¶ 22, 23; Timm Aff. ¶¶ 13,14; Groves Aff. ¶ 9; Grabowski Aff. ¶¶ 6, 7).

## ANALYSIS

The defendants assert that summary judgment should be entered in their favor because they are entitled to qualified immunity on the plaintiff's excessive force claim and his illegal search and seizure claim. Qualified immunity is immunity from suit rather than a mere defense to liability. Katz v. Saucier, 533 U.S. 194, 200-201 (2001). Determining whether a defense of qualified immunity is applicable involves a two-step test. Id. at 199. First, the court is to decide whether "[t]aken in the light most favorable to the party asserting the injury," the "facts alleged" show the officer's conduct violated a constitutional right. Id. at 201. In the event that no constitutional right would have been violated if the allegations were established, there is no need for further analysis of the qualified immunity issue. Id.

However, if a violation could be demonstrated based on a favorable view of the parties' submissions, the analysis proceeds to the second step which requires that the court determine whether the right was clearly established. Id. Such inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)). The plaintiff has the burden to show that the defendants violated his clearly-established rights. Kernats v. O'Sullivan, 35 F.3d 1171, 1176 (7th Cir. 1994).

### Excessive Force Claim Against Defendants Rich and Timm

The defendants contend that, even accepting the plaintiff's factual assertions as true, they are entitled to qualified immunity because such allegations do not show that they used excessive force in arresting the plaintiff in violation of his constitutional rights. Allegations that police officers used excessive force are analyzed under the Fourth Amendment and its

- 8 -

objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 394 (1989); Payne v. Pauley, 337 F.3d 767, 778 (7th Cir. 2003). "The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, at 396. The question is whether the force used is objectively reasonable in light of the facts and circumstances surrounding the arrest. In making this determination, courts should consider the severity of the suspect's alleged crime, whether the suspect poses a threat to the officers and whether the suspect is resisting arrest or attempting to flee. Id.; Payne, 337 F.3d at 778.

In the instant case, the plaintiff has not produced evidence from which a finder of fact could arguably infer that the defendants' use of force was objectively unreasonable in light of the circumstances surrounding his arrest. Although the plaintiff was arrested in connection with a minor offense (failure to pay a municipal citation), the undisputed facts show that he was uncooperative when the officers appeared at his residence and resisted arrest by repeatedly closing the door on the officers. Further, the uncontroverted evidence shows that the officers were aware that there were other individuals inside the plaintiff's residence which potentially presented a concern as to their safety. Given the situation and taking the facts in the light most favorable to the plaintiff, the fact that defendants Timm and Rich pushed the plaintiff to the floor and placed handcuffs on him after they finally gained entrance to his residence does not constitute a significant use of force. Moreover, the undisputed facts establish that defendant Grabowski loosened the plaintiff's handcuffs at the plaintiff's request within approximately five minutes. Other than temporary numbness due to the tight handcuffs, the plaintiff does not claim any physical injuries as a result of the defendants' actions.

Although the Court of Appeals for the Seventh Circuit has found that overly tight handcuffs can give rise to an excessive force claim, see Payne, 337 F.3d at 779-80; Herzog v. Village of Winnetka, 309 F.3d 1041, 1043 (7th Cir. 2003), the facts of those cases are clearly distinguishable from those presented in the instant case. In particular, both of the cases involved allegations that the plaintiff's requests to have the handcuffs loosened were ignored, the plaintiff's cooperated with the officers fully and did not attempt to resist or evade arrest and the plaintiffs suffered injuries due to other acts of force applied by the defendant officers. See Payne, 337 F.3d 767 (plaintiff alleged that she suffered significant injuries caused by the defendant running into her and knocking her body with his, twisting her arm and over-tightening the handcuffs); Herzog, 309 F.3d 1041 (plaintiff alleged that in addition to the tight handcuffs, the defendant forced a plastic breath test tube in her mouth and cracked her tooth and that she suffered injuries to her hands when she was pushed into some bushes).

As the court in Payne observed, factual scenarios involving subjects who resist arrest, fail to obey orders, are accused of a more serious crime or involve less force are distinguishable from those upon which it based its conclusion that the defendant's use of force was not objectively reasonable. Payne, 337 F.3d at 780; see Braun v. Baldwin, 346 F.3d 761, 762-763 (7th Cir. 2003) (defendant entitled to qualified immunity on claim that he was subjected to excessive force by police officers who handcuffed him too tightly after his arrest for disorderly conduct where there were no other facts alleged to suggest that the arrest was improper); Tibbs v. City of Chicago, 2005 WL 326982 (N.D. Ill. 2005) ("Plaintiff's testimony of having his legs kicked apart and being pushed down on a car hood, without any resulting injury, and his testimony of red marks on his wrist for a day or two as a result of the excessively tight handcuffs, does not create a reasonable inference of excessive force.").

- 10 -

Under the circumstances presented here, the defendant's use of force was not excessive and, therefore, did not violate the defendant's Fourth Amendment rights. Thus, defendants Timm and Rich are entitled to qualified immunity as to the plaintiff's excessive force claim.

## Illegal Search and Seizure Claim

As the plaintiff was being taken into custody, defendant Rich performed a protective sweep of the first and second floor of the plaintiff's residence. When he reached the second floor, defendant Rich encountered two of the plaintiff's guests and observed in plain view various drug paraphernalia and a plate containing a "white powdery substance." Because the plaintiff refused to consent to a further search of his residence, defendant Groves was shown the "plain view" evidence and he then obtained a search warrant. Upon receipt of the signed search warrant, the officers continued the search of the plaintiff's apartment.

The defendants maintain that they are entitled to qualified immunity for the plaintiff's claim arising from the search of the plaintiff's residence on the ground that it was justified pursuant to the protective sweep doctrine set forth in Maryland v. Buie, 494 U.S. 325, 327 (1990). A "protective sweep" is defined as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of the police officers or others . . . [and] narrowly confined to a cursory visual inspection of those places in which a person may be hiding." Id. A protective sweep, limited to "look[ing] in closets and other spaces immediately adjoining the place of arrest," is justified "incident to [an] arrest . . . as a precautionary matter and without probable cause or reasonable suspicion." Id. at 334.

A search that goes beyond those parameters is permissible when there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing

- 11 -

a danger to those on the arrest scene." Id. A protective sweep under these circumstances is "not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger . . .." Id. at 335-36. The determination of whether a protective sweep was reasonable is "'necessarily a very fact-specific one.'" Leaf v. Shelnutt, 400 F.3d 10701087 (7th Cir. 2005), quoting United States v. Burrows, 48 F.3d 1011, 1016 (7th Cir.), cert. denied, 515 U.S. 1168 (1995).

Based on the record, the court concludes that the protective sweep performed by the defendants was conducted in a reasonable manner. The officers heard voices inside the plaintiff's residence as they approached the rear door of the residence. Thus, upon entering the plaintiff's residence, the officers had reason to believe that there were unknown persons in the residence who might pose a physical danger to them or could have destroyed evidence. In light of Buie, the officers were entitled to ensure their own safety after entering a residence that they knew harbored individuals other than the subject.

The court notes that the plaintiff also contends that the search of his residence was unconstitutional because it was executed incident to an illegal arrest. Specifically, he contends that the arrest was illegal because it was premised on a "fake" arrest warrant. (Complaint at 6). Aside from the plaintiff's conclusory statements in his complaint that he believes that the arrest warrant was fake, the plaintiff has not presented any evidence to support his bald assertion. Moreover, the court previously determined that the plaintiff may not proceed on his false arrest claim because that claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994). (Court's Order of November 2, 2004, at 6). Raising that claim in an effort to challenge the defendants' motion for summary judgment runs counter to the court's ruling.

- 12 -

The plaintiff states that the search of his residence was unreasonable because it was conducted when he was no longer in his apartment (Plaintiff's Letter to the court filed June 23, 2005 [Plaintiff's Letter] at ¶ 3) and because the second floor was "out of the scope of the protective sweep." (Plaintiff's Letter at ¶ 6). The fact that the plaintiff was no longer in the apartment when the defendants executed the protective sweep does not render the search unreasonable.

Contrary to the plaintiff's assertion, the protective sweep doctrine is not premised solely on the need for law enforcement officers to protect themselves from the arrestee. Rather, the doctrine is premised on policy concerns which give proper regard to the "interest of the officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack." Buie, 494 U.S. at 333.

Furthermore, the defendants did not act unreasonably in extending the search to the second floor. Given the facts known to the defendants at the time – they had heard voices in the house other than the plaintiffs and had heard someone walking up the stairs in the residence – a reasonable officer could have believed that the second floor harbored a dangerous person. Therefore, it was reasonable for the officers to extend the search to the second floor.

The plaintiff also appears to be arguing that the fact that the defendants remained in his residence while defendant Groves obtained a search warrant rendered the protective sweep unreasonable. There is no evidence that the defendants continued their search of the plaintiff's premises between the time that the plaintiff refused to consent to a further search and when defendant Groves returned with the search warrant. It is also undisputed that the officers saw evidence of criminal activity during the course of the protective sweep. The

"government, while seeking a warrant, may secure the apartment on the basis of probable cause to prevent the destruction of evidence." Segura v. United States, 468 U.S. 796, 810 (1984). Thus, the defendants did not act unreasonably in remaining in the residence until a signed search warrant was obtained.

In light of the above, the court concludes that the Fourth Amendment was not violated by the protective sweep that the defendants conducted. The defendants are, therefore, entitled to qualified immunity on the plaintiff's illegal search claim.

Having concluded that the defendants are entitled to qualified immunity as to both of the plaintiff's claims, the defendants' motion for summary judgment will be granted.

## **CONCLUSION**

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment (Docket #25) be and hereby is **granted**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing the plaintiff's claims and this action.

Dated at Milwaukee, Wisconsin, this 8th day of December, 2005.

BY THE COURT:

s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge